IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
2018 NOV 19  P 4:15

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

LAKENDRA COOK, CHRISTOPHER GRAY, and SHARON MOTLEY, on behalf of themselves and those similarly situated,

Plaintiffs,

v.

HAL TAYLOR, in his official capacity as Secretary of the Alabama Law Enforcement Agency,

Defendant.

Case No. 2:18-cv-977-WKW-SRW

(CLASS ACTION)

**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**I.    PRELIMINARY STATEMENT**

1.  The State of Alabama is violating a core principle of the Fourteenth Amendment, which prohibits punishing persons simply because they are poor. Pursuant to Alabama Rule of Criminal Procedure 26.11(i)(3), courts routinely order the suspension of driver's licenses for nonpayment of traffic tickets without prior notice, the opportunity to be heard, or an express finding that the person is able to pay and willfully failed to do so. The Alabama Law Enforcement Agency (hereinafter "ALEA") administers, effectuates, and enforces driver's license suspensions under the Rule. In 2018, nearly 23,000 Alabama residents had suspended driver's licenses for failure to pay traffic tickets.

2.  Alabama has the sixth highest number of individuals living in poverty in the United States—more than 18 percent of the State. For those who can afford to pay, traffic tickets are a mere inconvenience. But for those who cannot afford to pay, a traffic ticket can result in

the loss of their driver's license, which frequently has much more serious economic consequences. This is especially true in a state like Alabama where a vast majority of counties are rural and lack accessible public transportation to work, home, education, and medical care.

3. The plights of Plaintiffs Lakendra Cook, Christopher Gray, and Sharon Motley are typical. Ms. Cook's driver's license is suspended because she cannot afford to pay two traffic tickets. A suspended driver's license has limited her employment opportunities. Although she lives in fear that she will be arrested while driving to work, her son to school, or her grandmother to the doctor's office, she has no choice but to drive because public transportation is limited in the Birmingham area, where she lives.

4. Mr. Gray has also suffered and will continue to suffer irreparable harm because his driver's license is suspended because he cannot afford to pay two traffic tickets. Having a suspended driver's license makes it more difficult for Mr. Gray to pay his traffic tickets because he does not have valid identification and cannot travel to work without risking more tickets or arrest.

5. Ms. Motley has also suffered and will continue to suffer irreparable harm because of Alabama's unconstitutional driver's license suspension scheme. Her driver's license is currently suspended because she cannot afford to pay an old traffic ticket. Having a suspended driver's license makes it difficult for Ms. Motley to secure and retain employment, apply for housing, cash checks, and obtain medical care. Although she lives in fear of being arrested for driving with a suspended driver's license, she is often forced to drive because public transportation is so limited in Montgomery, where she lives.

6. Plaintiffs bring these claims on behalf of themselves and all others similarly situated to challenge the constitutionality of Alabama Rule of Criminal Procedure 26.11(i)(3).

They seek: (1) a declaration that Alabama Rule of Criminal Procedure 26.11(i)(3) is unconstitutional; (2) an injunction preventing ALEA from effectuating any driver's license suspension pursuant to Alabama Rule of Criminal Procedure 26.11(i)(3); (3) an injunction requiring ALEA to reinstate any driver's license previously suspended under Alabama Rule of Criminal Procedure 26.11(i)(3) without requiring a reinstatement fee, if there are no other independent reasons for suspension; and (4) an injunction requiring ALEA to provide notice of reinstatement to individuals with suspended driver's licenses for nonpayment.

## II.   JURISDICTION AND VENUE

7.   The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

8.   Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant Taylor, who is sued in his official capacity, resides in this State and is employed as a State official in Montgomery, Alabama, within this District and Division, and because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## III.   PARTIES

### A.   Plaintiffs

9.   Plaintiff Lakendra Cook is a resident of Birmingham, Alabama.

10.   Plaintiff Christopher Gray is a resident of Homewood, Alabama.

11.   Plaintiff Sharon Motley is a resident of Montgomery, Alabama.

### B.   Defendant

12.   Defendant Hal Taylor is the Secretary of the Alabama Law Enforcement Agency. He is sued in his official capacity.

IV.   **STATEMENT OF FACTS**

  A.   <u>**A driver's license is necessary to pursue a livelihood.**</u>

13.   There are nearly 23,000 Alabamians with suspended driver's licenses for nonpayment of traffic tickets.

14.   Many of the people with suspended licenses are among the more than 800,000 people living in poverty in Alabama or 18.5% of the State, according to the U.S. Census Bureau. This is the 6th highest poverty rate in the country.[1] Suspending a driver's license for nonpayment of traffic fines and costs disproportionately affects low-income persons and communities of color. This is especially true in Alabama, which has the third highest percentage of persons in the United States living in hunger and the sixth highest unemployment rate in the country.[2]

15.   The indefinite suspension of the driver's licenses of low-income Alabamians has devastating consequences for their ability to pursue a livelihood and meet basic human needs. Eighty-six percent of Americans describe a car as a "necessity of life," which is higher than the percentage of people who identified air conditioning, a cell phone, a computer, and every other consumer item to be a life necessity.[3] Several studies have noted that a driver's license is a

---

[1] Alemayehu Bishaw & Brian Glassman, U.S. Census Bureau, *Poverty: 2014 and 2015*, 3 (2015), attached as Ex. G to West Decl., *available at* https://goo.gl/ZtCitb.

[2] Ctr. for Am. Progress, *Alabama*, Talkpoverty.org (2017), attached as Ex. H to West Decl., *available at* https://talkpoverty.org/state-year-report/alabama-2017-report/.

[3] Paul Taylor and Wendy Wang, Pew Research Center, *The Fading Glory of The Television & Telephone* (2010), attached as Ex. I to West Decl., *available at* http://www.pewsocialtrends.org/2010/08/19/the-fading-glory-of-the-television- and-telephone/.

4

"very common requirement" to obtain employment, including most jobs that "can actually lift people out of poverty."[4]

16. The need for a car is particularly great in Alabama, where "public transit networks . . . are among the weakest of quality in the country."[5]

17. In Alabama, nearly 95 percent of residents travel to work by car and only 0.5 percent travel to work by public transit.[6] It is not hard to understand why. According to one report, only 32.1 percent of working-age residents in the Birmingham, Alabama metropolitan area had access to public transportation, ranking 94th out of the 100 largest metropolitan areas in the United States.[7] Most jobs in Alabama are inaccessible by public transit even for the few people for whom public transportation is accessible.[8]

---

[4] Alan Semuels, *No Driver's License, No Job*, The Atlantic, June 15, 2016, attached as Ex. J to West Decl., *available at* https://goo.gl/xQjyLj; *see also* Stephen Bingham, et al., *Stopped, Fined, Arrested: Racial Bias in Policing and Traffic Courts in California* 26-28 (2016) (finding license suspensions cause loss of employment because they are necessary for transportation to and from work; to obtain full time, steady employment; for job-training programs; and because employers often screen out those without licenses), attached as Ex. K to West Decl., *available at* https://goo.gl/uLhFfL; Alan Voorhees, et al., *Motor Vehicles Affordability and Fairness Task Force: Final Report* xii (2006) (finding, in study of drivers with suspended licenses in New Jersey, 42% of people lost their jobs after suspension of their driver's license and 45% of those people could not find another job; these suspensions had greatest impact on seniors and low-income individuals), attached as Ex. L to West Decl., *available at* https://www.state.nj.us/mvc/pdf/about/AFTF_final_02.pdf.

[5] Chico Harlan, *A lonely road*, Wash. Post, Dec. 28, 2015, attached as Ex. M to West Decl., *available at* https://goo.gl/JL2Mb6.

[6] *See* U.S. Dep't of Transp., Bureau of Transp. Stats., *Alabama Transportation by the Numbers* 6 (2015), attached as Ex. N to West Decl., *available at* https://goo.gl/8RF6Sp.

[7] *See* Adie Tomer, et al., Brookings Institute, *Missed Opportunity: Transit and Jobs in Metropolitan America* 8 (2011) (finding metropolitan areas in the South represent lowest transit coverage in the United States), attached as Ex. O to West Decl., *available at* https://goo.gl/Rg8CGx.

[8] *See, e.g., id.* at 21, 35 (finding that only 23.3% percent of jobs in Birmingham-Hoover, Alabama metropolitan region were accessible via public transportation).

18. According to another report, public transportation is available in only 60 percent of rural counties across the United States, with 20 percent providing only limited service.[9]

19. Suspending driver's licenses for nonpayment makes it more difficult to travel to work and may exacerbate poverty.

20. Persons whose licenses are suspended face an unenviable choice: drive illegally and risk further punishment, or stay home and forgo the ability to meet the daily needs of themselves and their families. When faced with either losing their jobs or remaining unemployed, or otherwise risking being pulled over for driving with a suspended license, individuals often chose the latter—risking arrest, additional fines and costs, and longer suspension periods—so they can maintain their livelihood and support their families.

21. Driving with a suspended driver's license in Alabama is a misdemeanor offense carrying up to six months in prison and a $500 fine plus hundreds of dollars in court costs.

### B. Ala. R. Crim. P. 26.11(i)(3) authorizes courts to suspend driver's licenses without any inquiry into ability to pay.

22. Alabama Rule of Criminal Procedure 26.11(i)(3) authorizes courts to order the suspension of an individual's driver's license for nonpayment of traffic tickets.[10] Rule 26.11(i)(3) states:

> If the court orders a defendant to pay a fine and/or restitution imposed as a result of a traffic infraction, the court may suspend the defendant's privilege to operate a motor vehicle in this state upon a failure of the defendant to comply with the order of the court.

---

[9] See S. Rural Black Women's Initiative for Econ. & Soc. Just., *Unequal Lives: The State of Black Women and Families in the Rural South* 16 (2015), attached as Ex. P to West Decl, available at http://srbwi.org/images/uploads/SRBWI_Report_Layout_for_web_low_res_%281%29.pdf.

[10] Although the Rule talks about "fine *and/or restitution* imposed as a result of a traffic ticket," the majority of traffic tickets in Alabama do not result in restitution. Even Defendant's own policy statement references only unpaid "fines and court costs." *See* Department of Public Safety Driver License Policy Order No. 33 Failure to Pay Suspensions, attached as Ex. F to West Decl.

> If the defendant's privilege to operate a motor vehicle has been suspended for failure to comply with such order, the privilege may remain suspended until the total amount of the fine and/or restitution imposed is paid.

*See also* Ala. R. Crim. P. 26.11(j) ("[T]he same procedures provided herein for nonpayment of fines shall apply for nonpayment of costs.").

23. Rule 26.11(i)(3) authorizes suspensions for nonpayment without any pre-suspension hearing, or a finding that a motorist willfully failed to pay. The only finding that Rule 26.11(i)(3) requires prior to suspension is that the motorist failed "to comply" with a court order "to pay a fine and/or restitution imposed as a result of a traffic infraction."

24. Rule 26.11(i)(3) does not require any notice or an opportunity to be heard prior to the suspension of a driver's license for nonpayment of a traffic ticket.

25. This broad authority to suspend licenses without any pre-suspension notice, opportunity to be heard, or express finding that the individual is able to pay and willfully failed to do so differs significantly from the rest of Rule 26.11(i), which prohibits courts from incarcerating any person "for inability to pay a fine or court costs or restitution" and requires a court to examine "the reasons for nonpayment" prior to incarceration. Ala. R. Crim. P. 26.11(i)(1)-(2).

26. Rule 26.11(i)(3) authorizes the indefinite suspension of a license suspended for nonpayment "until the total amount of the fine and/or restitution imposed is paid." There are no provisions for post-suspension process to contest the erroneous suspension of a driver's license because a person could not afford to pay the ticket.

7

  **C.** **ALEA administers and enforces any order to suspend a driver's license for nonpayment pursuant to Ala. R. Crim. P. 26.11(i)(3).**

  27. State law requires ALEA to administer, effectuate, and enforce any laws relating to the operation of vehicles, including Rule 26.11(i)(3). Ala. Code § 32-2-5.[11]

  28. Defendant Taylor is the "executive head" and "appointing authority" of ALEA. Ala. Code § 41-27-2. He establishes general policies and oversees the actions of the agency, including those related to driver's license suspensions.

  29. ALEA's role in the suspension process is memorialized in written policy documents. These policy documents state that "[i]t is the policy of the Director and the Driver License Division [of ALEA] that any person" who "fails to pay" will have their driver's license "suspended until . . . the fines and court costs have been paid." Ex. F to West Decl.

  30. The Administrative Office of Courts issued a letter to judges and clerks at the time of the Rule's initial implementation further describing ALEA's role as "process[ing] driver actions in regard to failure-to-pay traffic cases." Mar. 3, 1991 Failure to Pay Memorandum, attached as Ex. C to West Decl. It states that in order to suspend a driver's license for nonpayment, a court must complete a form referred to as Form UTC-25 and "forward[] [it] to the Department of Public Safety . . . to initiate the suspension for the defendant in a particular case." *Id.* at 2; *see also* Form UTC-25, attached as Ex. B to West Decl.

  31. The letter continues to describe ALEA's role in suspension and reinstatement:

> The Department of Public Safety will suspend only once per case for failure to pay. When the defendant pays the total amount of the fine, costs, and/or restitution due the court for this same case, the judge must sign and date the original order in the appropriate space (right side) in order for the defendant's application to the Department of Public

---

[11] The Department of Public Safety became part of ALEA as part of an agency restructuring in 2015. Ala. Code § 41-27-1(1). The same act made the Secretary of ALEA the department head of the Department of Public Safety. Ala. Code § 41-27-2(a).

>Safety to reinstate the license [to] be approved. . . . As stated earlier, Public Safety will suspend only once per case for failure to pay and will not reinstate the license until an order is received from the judge stating that the defendant has paid the total amount due the court.

Ex. C to West Decl. at 2-3.

32. This is the exclusive process available to effectuate or clear suspensions for nonpayment. *See* Ex. F to West Decl. ("Only Form UTC-25 is acceptable to clear a fail to pay suspension.").

33. Form UTC-25 authorizes judges to order the suspension of a driver's license for nonpayment after making a finding that a motorist was "ordered to pay a fine, court costs and/or restitution" and "failed to pay." Ex. B to West Decl. In order to suspend a license for nonpayment, the form does not require a judge to represent that a pre-suspension ability to pay hearing was conducted and that a finding was made that the motorist willfully failed to pay. *See id.*

34. Form UTC-25 additionally states that a license will remain suspended "until the fine is paid in full" and prohibits reinstatement until a judge or clerk certifies that the motorist "paid the total amount" of the fine, court cost, and/or restitution. *See id.*

35. These practices and policies are further reflected in the standard notice that ALEA mails to motorists following suspension. The Suspension Notice states that the motorist's driver's license will remain suspended for an "indefinite" duration until he or she pays "the outstanding fine and/or court costs," the court mails Form UTC-25 to ALEA as proof of payment, and the motorist pays a $100 reinstatement fee. *See* ALEA Suspension Notice, attached as Ex. D to West Decl.[12] The letter does not provide motorists with any notice about

---

[12] ALEA charges an additional $50 reinstatement fee if a motorist does not surrender his or her driver's license to ALEA within 30 days of the mailing of the suspension notice.

the possibility of a hearing to contest the suspension because the motorist is indigent and unable to pay.

### E. Plaintiffs' driver's licenses have been unlawfully suspended for failing to pay traffic tickets without an inquiry into or finding that they had the ability to pay.

#### 1. Ms. Lakendra Cook

36. Plaintiff Lakendra Cook lives in Jefferson County, Alabama.

37. Ms. Cook's driver's license was suspended for failing to pay two traffic tickets in the Wetumpka Municipal Court.

38. Neither the court nor ALEA conducted an ability to pay hearing prior to suspending Ms. Cook's driver's license.

39. Ms. Cook has had difficulty traveling to work, doctor's appointments, and her ten-year old son's school because her driver's license is suspended.

40. Ms. Cook would pay the traffic tickets if she could, but her paycheck from working in a warehouse is not enough to pay all of her bills. As a result, she is sometimes forced to make the choice between paying for groceries or utilities.

41. Although Ms. Cook tries to avoid driving, sometimes she has no choice because public transportation is limited in Birmingham.

42. She worries that if she is arrested for driving with a suspended driver's license her son will be left without his mother and she will lose her job.

43. This fear has limited Ms. Cook's employment opportunities because she worries about driving too far from home while her driver's license remains suspended.

#### 2. Mr. Christopher Gray

44. Plaintiff Christopher Gray is a resident of Jefferson County.

45. Mr. Gray's driver's license is currently suspended because he cannot afford to pay two traffic tickets that he received in the Lee County District Court.

46. Mr. Gray also has an active failure to pay arrest warrant.

47. Neither the court nor ALEA conducted an ability to pay hearing prior to suspending Mr. Gray's driver's license or issuing the warrant for his arrest.

48. Mr. Gray's driver's license suspension is a double-edged sword: he needs a license in order to work and improve his financial situation, but he needs money in order to reinstate his license so that he can work.

49. Mr. Gray's driver's license has also handicapped his earning potential because he cannot legally drive and because many jobs require a driver's license for travel and to pass a background check.

50. Mr. Gray's driver's license suspension has deepened his depression: he feels stigmatized by the suspension and fearful that he will be arrested for driving with a suspended license when he does drive.

51. Having a suspended driver's license has made it more difficult for Mr. Gray to change banks, fill prescriptions, and visit friends and family.

### 3. Ms. Sharon Motley

52. Plaintiff Sharon Motley is a resident of Montgomery County.

53. Ms. Motley's driver's license is currently suspended because she cannot afford to pay a traffic ticket that she received in the Montgomery County District Court in 2013.

54. Neither the court nor ALEA conducted an ability to pay hearing prior to suspending Ms. Motley's driver's license.

55. Having a suspended driver's license has made it difficult for Ms. Motley to secure and retain employment: employers have rescinded employment offers because she could not perform certain job functions without a valid driver's license like deposit checks or travel for work.

56. A suspended driver's license has also made it difficult for Ms. Motley to apply for housing, cash checks, and obtain medical care.

57. Because public transportation is limited in Montgomery, she is often forced to drive and lives in fear of being arrested for driving with a suspended driver's license.

## V.   CLASS ALLEGATIONS

58. Plaintiffs seek class certification pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2) related to their Claim, for which prospective injunctive and declaratory relief only is sought. This Class is defined as: All individuals whose driver's licenses are suspended for nonpayment of traffic tickets.

59. A class action is the only practicable means by which Plaintiffs and unknown members of the Class can challenge Alabama's unconstitutional driver's license suspension law, Alabama Rule of Criminal Procedure 26.11(i)(3), and ALEA's policy and practice of indefinitely suspending driver's licenses for nonpayment without any prior notice, the opportunity to be heard, or an express finding that that the individual is able to pay and willfully failed to do so.

60. As set forth below, this action satisfies the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a). This action also satisfies Federal Rule of Civil Procedure 23(b)(2).

61. *Numerosity*: The exact size of the Class is unknown by Plaintiffs, but the Class plainly meets the numerosity requirement, thereby making joinder impracticable. In April 2018,

there were nearly 23,000 people with suspended driver's licenses in Alabama for nonpayment of traffic fines and costs. April 20, 2018 Letter from ALEA, attached as Ex. A to West Decl. That number is likely to continue to grow.

62. Members of the proposed Class, such as Plaintiffs, are also geographically diverse, and many are low-income individuals who lack financial resources to bring an independent action or to be joined in this action. Putative members have experienced the suspension of their driver's licenses precisely because of their inability to pay; thus, they are unlikely to be able to afford counsel to bring their own separate action against Defendant.

63. ***Commonality***: All persons comprising the proposed Class are equally subject to Alabama Rule of Criminal Procedure 26.11(i)(3), which authorizes courts to order ALEA to suspend licenses for nonpayment without prior notice, the opportunity to be heard, or an express finding that a motorist is able to pay and willfully failed to do so.

64. Plaintiffs raise claims based on questions of law and fact that are common to, and typical of, the putative class members. Common questions of fact include:

    a. Whether Alabama Rule of Criminal Procedure 26.11(i)(3) authorizes courts to order the suspension of driver's licenses for nonpayment without any prior notice, the opportunity to be heard, and an express finding that the motorist is able to pay and willfully failed to do so; and

    b. Whether ALEA has a policy and practice of administering, effectuating, and enforcing any suspension order without any documentary evidence that the motorist received notice, the opportunity to be heard, and there was an express finding that the motorist is able to pay and willfully failed to do so.

Common questions of law include:

    a.    Whether Alabama Rule of Criminal Procedure 26.11(i)(3) violates the Fourteenth Amendment by authorizing courts to suspend driver's licenses for nonpayment without any prior notice, the opportunity to be heard, and an express finding that the motorist is able to pay and willfully failed to do so; and

    b.    Whether injunctive and declaratory relief is appropriate and if so, what the terms of such relief should be.

65. The relief sought is common to all members of the Class. Plaintiffs seek relief declaring Alabama Rule of Criminal Procedure 26.11(i)(3) unconstitutional. They additionally seek: (a) an injunction preventing ALEA from effectuating any driver's license suspension for nonpayment under Rule 26.11(i)(3); (b) an injunction requiring ALEA to reinstate any driver's license previously suspended under Rule 26.11(i)(3) without requiring a reinstatement fee, if there are no other independent reasons for the suspension; and (c) an injunction requiring ALEA to give notice to individuals with suspended driver's licenses for nonpayment of their reinstatement.

66. ***Typicality:*** The claims of Plaintiffs are typical of the claims of the proposed Class as a whole. Plaintiffs and the putative Class members have suffered the same direct, irreparable injury of loss of their driver's license, and this injury will continue unless Rule 26.11(i)(3) is declared unconstitutional and enjoined.

67. Because Plaintiffs and the proposed Class challenge the same unconstitutional Rule and practices, ALEA will likely assert similar defenses against Plaintiffs and proposed Class members. Moreover, the answer to whether Rule 26.11(i)(3) and the challenged practices

are unconstitutional will determine the success of Plaintiffs' claims and every other proposed Class member: if Plaintiffs succeed in their claims, that ruling will likewise benefit every other member of the proposed Class.

68.   *Adequacy*: Plaintiffs will fairly and adequately represent the interests of the proposed Class they seek to represent.

69.   Plaintiffs have no interests separate from, or in conflict with, those of the proposed Class they seek to represent and seek no relief other than the declaratory and injunctive relief sought on behalf of the entire proposed Class.

70.   *Rule 23(b)(2)*: Class action status under Rule 23(b)(2) is appropriate because ALEA has acted or failed and/or refused to act on grounds that generally apply to the proposed Class, such that preliminary and final injunctive and declaratory relief is appropriate and necessary with respect to each member of the Class. Specifically, ALEA effectuates suspension orders pursuant to Alabama Rule of Criminal Procedure 26.11(i)(3), which authorizes driver's license suspensions for nonpayment of traffic tickets without any determination of willfulness or ability to pay, and without a pre-deprivation hearing.

71.   Accordingly, (a) a declaration that Alabama Rule of Criminal Procedure 26.11(i)(3) violates the Fourteenth Amendment; (b) an injunction preventing ALEA from effectuating any driver's license suspension for nonpayment under Rule 26.11(i)(3); (c) an injunction requiring ALEA to reinstate any driver's license previously suspended under Rule 26.11(i)(3) without requiring a reinstatement fee if there are no other independent reasons for the suspension; and (d) an injunction requiring ALEA to provide notice to individuals with suspended driver's licenses for nonpayment about reinstatement would benefit every member of the proposed Class.

72. *Rule 23(g):* Plaintiffs respectfully request that the undersigned be appointed as Class Counsel. The undersigned attorneys from the Southern Poverty Law Center have experience in class-action litigation involving complex civil rights matters in federal court and knowledge of the relevant constitutional and statutory law and Defendant's suspension practices. Counsel also have the resources, expertise, and experience to prosecute this action.

## VI.   CLAIM FOR RELIEF

### Fourteenth Amendment of the U.S. Constitution
### (Equal Protection and Due Process *Bearden* Violation)

73. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth here.

74. Plaintiffs bring this claim on behalf of themselves and the proposed Class they seek to represent.

75. The Fourteenth Amendment to the U.S. Constitution prohibits punishing individuals for nonpayment without first determining that they had the ability to pay and willfully refused to make a monetary payment. *See Bearden v. Georgia*, 461 U.S. 660 (1983).

76. Alabama Rule of Criminal Procedure 26.11(i)(3) authorizes courts to indefinitely suspend motorists' driver's licenses for nonpayment of traffic fines, restitution and/or court costs without prior notice, the opportunity to be heard, and an express finding that the individual is able to pay and willfully failed to do so. ALEA administers, effectuates, and enforces these suspension orders.

77. Plaintiffs have a substantial interest in their driver's licenses.

78. Suspending the driver's license of a motorist who does not have the means to pay, through no fault of his or her own, is not substantially related to any important government interest.

79. There are alternate means to effectuate Alabama's interest in collecting unpaid fines, restitution and/or court costs, including, *inter alia*, extending the time to make payments, reducing the amount owed, or ordering a motorist to complete community service or coursework.

80. Alabama Rule of Criminal Procedure 26.11(i)(3) violates Plaintiffs' rights under the Fourteenth Amendment of the U.S. Constitution by authorizing courts to suspend any motorist's driver's license for nonpayment of fines, restitution and/or court costs without first considering the reason for nonpayment, and without determining if the motorist willfully refused to pay. ALEA violates Plaintiffs' rights under the Fourteenth Amendment by administering, effectuating, and enforcing these suspensions.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief:

a. Assume jurisdiction over this action;

b. Certify a Class under Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure represented by Plaintiffs Ms. Cook, Mr. Gray, and Ms. Motley;

c. A declaration that Rule 26.11(i)(3) of the Alabama Rules of Criminal Procedure violates the Equal protection and Due Process Clauses of the Fourteenth Amendment, as articulated in *Bearden v. Georgia*, by suspending a motorist's driver's license for nonpayment without prior notice, the opportunity to be heard, and an express finding that the motorist is able to pay and willfully failed to do so;

d. An injunction:

  i. Preventing ALEA from effectuating driver's license suspensions for nonpayment under Alabama Rule of Criminal Procedure 26.11(i)(3);

        ii.      Requiring ALEA to reinstate any driver's license previously suspended under Alabama Rule of Criminal Procedure 26.11(i)(3) without charging a reinstatement fee, if there is not an independent reason to continue the suspension; and

        iii.     Requiring ALEA to provide notice to drivers with suspended licenses of their driver's license reinstatement;

e.    Award Plaintiffs costs, including attorney fees; and

f.    Grant such other relief as the Court deems just and appropriate.

Dated: November 19, 2018

Respectfully submitted,

_____
Micah West
*On Behalf of Counsel for Plaintiffs*

Micah West (ASB-1842-J82F)
Sara Zampierin (ASB-1695-S34H)
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, Alabama 36104
Telephone: (334) 956-8200
Fax: (334) 956-8481
samuel.brooke@splcenter.org
micah.west@splcenter.org
sara.zampierin@splcenter.org

Danielle Davis*
SOUTHERN POVERTY LAW CENTER
201 St. Charles Avenue, Suite 2000
New Orleans, LA 70170
Telephone: (504) 526-8982
Fax: (504) 486-8947
danielle.davis@splcenter.org

*\* application for pro hac vice forthcoming*

**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that arrangements have been made to deliver a true and correct copy of the foregoing by process service to the following parties, at the below addresses:

Hal Taylor, Secretary of Alabama Law Enforcement Agency
201 South Union Street, Suite 3000
Montgomery, AL 36130

Formal proof of service will be filed with the Court when completed.

I further certify that arrangements have been made to deliver a true and correct courtesy copy of the foregoing by hand delivery and by electronic mail to the following:

James W. Davis, Section Chief
Constitutional Defense Section
Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36104
E: jimdavis@ago.state.al.us

DATED this November 19, 2018.

_____
Micah West