IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

LAKENDRA COOK,           )
SHARON MOTLEY,           )
                         )
        Plaintiffs,      )
                         )
    v.                   )        CASE NO. 2:18-CV-977-WKW
                         )               [WO]
HAL TAYLOR, in his official )
capacity as Secretary of the )
Alabama Law Enforcement   )
Agency,                   )
                         )
        Defendant.       )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Lakendra Cook and Sharon Motley, two indigent Alabama residents, currently have suspended driver's licenses. Those licenses were suspended by state courts because Plaintiffs failed to pay their traffic tickets. Plaintiffs say those suspensions were unconstitutional because the courts did not consider whether Plaintiffs were unable to pay through no fault of their own. Plaintiffs filed this lawsuit to get their licenses back.

When they filed suit, Plaintiffs also had license suspensions for failing to appear in court for *different* traffic tickets. Plaintiffs do not challenge those suspensions. And those suspensions mean that the court cannot give Plaintiffs what

they want: the reinstatement of their driver's licenses. And since the court cannot give Plaintiffs what they want, they lack standing to bring this suit.

Plaintiffs seek a preliminary injunction (Doc. # 2) to prohibit Defendant Hal Taylor, head of the Alabama Law Enforcement Agency (ALEA),[1] from enforcing an Alabama rule that authorizes state courts to suspend indigent individuals' driver's licenses without finding that they willfully refused to pay. Plaintiffs also seek an order requiring the State to reinstate licenses suspended under this rule. Finally, Plaintiffs move to certify a class of similarly situated individuals. (Doc. # 4.) The State moved to dismiss (Doc. # 20) on jurisdictional grounds as well as on the merits. This opinion addresses those motions.

## I.    JURISDICTION AND VENUE

Because this case involves a constitutional challenge to state actions, subject-matter jurisdiction is proper under 28 U.S.C. § 1331 (federal question). The parties do not contest personal jurisdiction or venue.

## II.    STANDARD OF REVIEW

An attack on subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) may be either a facial attack or a factual attack. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). A facial attack simply challenges the

---

[1] Because Plaintiffs sue Taylor in his official capacity, the court will refer to Defendant as "the State."

sufficiency of the plaintiff's jurisdictional allegations, which are taken as true. *Id.* at 1529 (quotation omitted). Factual attacks, however, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* (quotation omitted). The State attacks Plaintiffs' standing based on their separate license suspensions for failing to appear in court. This is a factual attack on jurisdiction that requires the court to look beyond the allegations of the complaint and to the evidence presented by the parties. *See MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1318–19 (11th Cir. 2019). Thus, in deciding the motion, the court has reviewed all the evidence presented by the parties.

## III. BACKGROUND

### A. Alabama's Driver's License-Suspension Scheme

#### 1. Receiving a Traffic Ticket

Alabama police officers are required by statute to use a uniform traffic ticket. *See* Ala. Code § 12-12-53(a). That statute is implemented by Alabama Rule of Judicial Administration 19(A), which is promulgated by the Alabama Supreme Court. Rule 19(A) provides what each traffic ticket must contain and includes the standard ticket form, called Form UTTC-1. Prior to November 30, 2018, Form UTTC-1 (Series N) was the standard traffic ticket throughout the state. (Doc. # 20-4, at 2.)

The Series N ticket has a section entitled "NOTICE," which gives "INSTRUCTIONS TO THE DEFENDANT." (Doc. # 20-4, at 14.) The notice states that the defendant must appear in court on a given date unless she has already settled the case. If the defendant fails to appear, the Department of Public Safety will be notified to suspend her license. (Doc. # 20-4, at 14.) Series N does not give notice that defendants who fail to pay their fines are subject to license suspension. (Doc. # 20-4, at 3.)

### 2. *The State's Changes to the Traffic Ticket System*

On January 26, 2018, the Standing Committee on the Alabama Rules of Judicial Administration recommended that the Alabama Supreme Court amend Rule 19(A) and the UTTC-1 ticket to include language notifying persons who received traffic tickets that their license is subject to suspension for failure to pay fines or enter into a court-approved payment plan. (Doc. # 20-4, at 3.) On May 9, 2018, the Alabama Supreme Court entered an order amending Rule 19(A) to include the Standing Committee's proposed language. (Doc. # 20-4, at 3.)

On August 10, 2018, the Standing Committee recommended that the court adopt an updated Form UTTC-1 that includes: (1) the new notice language already approved by the court; and (2) several corrective changes, such as replacing references to the "Department of Public Safety" with the "Alabama Law Enforcement Agency." (Doc. # 20-4, at 4.) Form UTTC-1 (Series P) contains the

additional notice language approved by the court in the amendments to Rule 19(A). (Doc. # 20-4, at 3.)

Form UTTC-1 (Series P) was approved by the Alabama Supreme Court on November 30, 2019, eleven days after this lawsuit was filed. (Doc. # 20-4, at 4.) Series P is now the operative uniform traffic ticket in Alabama.

### 3. *Courts' Authority to Impose Fines and Suspend Licenses*

#### a. **Courts' Authority to Impose Fines**

Alabama Rule of Criminal Procedure 26.11 governs fines and restitutions in state courts.[2] Rule 26.11(b) provides that courts, in deciding whether to impose a fine, "*should* consider" five factors, including "the financial resources and obligations of the defendant and the burden that payment of a fine will impose," as well as the "ability of the defendant to pay a fine forthwith on an installment basis or on other conditions to be fixed by the court." Ala. R. Crim. P. 26.11(b)(2), (3) (emphasis added).

If the defendant fails to pay a fine, the court "*may* inquire and cause an investigation to be made into the defendant's financial, employment, and family standing, and the reasons for nonpayment of the fine," including whether nonpayment "was contumacious or due to indigency," — that is, whether the

---

[2] "Rule 26.11 is taken from the ABA Standards for Criminal Justice, Sentencing Alternatives and Procedures 18-2.7 (2d ed. 1986)." Ala. R. Crim. P. 26.11 committee comments.

defendant willfully chose not to pay or was simply too poor. Ala. R. Crim. P. 26.11(g) (emphasis added). The words *should* and *may*, when read in their ordinary sense, mean that courts are not required to consider the indigency of the defendant in deciding whether to impose a fine or in determining why a fine has not been paid.[3]

### b. Courts' Authority to Suspend Driver's Licenses

When a court imposes a fine for a traffic violation, it "may suspend" the defendant's driver's license "upon a failure of a defendant to comply with the order of the court" — that is, when the defendant fails to pay the fine. Ala. R. Crim. P. 26.11(i)(3). And the license "may remain suspended until the total amount of the fine" has been paid. *Id.*

### 4. Implementing Court-Ordered Suspensions

To effectuate a license suspension, the court sends a form, called a UTC-25, to the Alabama State Law Enforcement Agency (ALEA).[4] (Docs. # 6-3, at 3.) That form contains a box that the judge or clerk must check certifying that the defendant was ordered to pay a fine and failed to pay. (Doc. # 6-2.) ALEA then mails a notice to the defendant that her license has been suspended. (Doc. # 6-4.)

---

[3] The parties have not cited, and the court has not found, an Alabama case construing the language in Rule 26.11 as mandatory.

[4] ALEA includes the Department of Public Safety and the State Bureau of Investigations. *See* Ala. Code § 41-27-1.

If a defendant receives a traffic ticket and fails to show up on her court date, a separate provision governs. Upon receiving "written notice from the court" that the defendant failed to appear, ALEA "shall suspend the driver license and driving privilege of the defaulting driver until notified by the court" that the defendant has appeared. Ala. Admin. Code. r. 760-X-1-.12.

Defendant Hal Taylor, as head of ALEA, is tasked with administering and enforcing the laws governing motor vehicles in the state. *See* Ala. Code §§ 32-2-5; 41-27-2(a). He also implements court-ordered license suspensions. (*See* Docs. # 6-3, 6-4, 6-5, 6-6.)

## B.    The Plaintiffs

### 1.    Lakendra Cook

Plaintiff Lakendra Cook is a single mother living in Birmingham, Alabama. Her driver's license is currently suspended for two reasons. First, Cook's license was suspended on March 12, 2018, for her failure to pay a total of $313 in fines and costs for two traffic tickets in Wetumpka Municipal Court. (Doc. # 20-1, at 10, 14.) That was after she agreed to a court-approved payment plan and stated that she was financially able to meet it (Doc. # 20-1, at 15), and failed to appear at a review hearing on January 30, 2018 (Doc. # 20-1, at 12, 14, 15).

Following the Wetumpka suspension, Cook's driver's license was suspended in a Hale County case. Cook received a ticket in Hale County and failed to appear

in court on June 11, 2018.  (Doc. # 20-1, at 21, 22.)  In a written notice, the court reset the case for September 7, 2018, ordering Cook to pay her ticket in full or appear in court on that date, or else her license would be subject to suspension.  (Doc. # 20-1, at 22, 23.)  Cook failed to appear at her September 7 court date, (Doc. # 20-1, at 24), and a suspension notice was issued on September 14, 2018 (Doc. # 20-1, at 20).

Thus, when the complaint was filed, Cook's driver's license was suspended for:  (1) failure to pay in her Wetumpka case; and (2) failure to appear in her Hale County case.  Cook "is in the process of addressing her suspension in Hale County." (Doc. # 22, at 5 n.2.)  After signing a court document to the contrary, Cook now says she cannot afford to make the payments in her Wetumpka case.[5]  (Doc. # 1-1, at 1.)

### 2.  *Sharon Motley*

Plaintiff Sharon Motley lives in Montgomery, Alabama.  Her license is currently suspended for two reasons.  First, on June 6, 2005, the Montgomery Municipal Court issued alias warrants after Motley failed to appear at her court date for two tickets she received.  (Doc. # 20-3, at 12, 16.)

---

[5] Cook offers no explanation for her signed agreement in a Wetumpka Municipal Court document that "I AM FINANCIALLY ABLE TO PAY THE PAYMENTS SET OUT ABOVE." (Doc. # 20-1, at 15.)  While that statement does not necessarily bind Cook as a judicial admission because it was made in a different case, *see Raiford v. Abney (Matter of Raiford)*, 695 F.2d 521, 523 (11th Cir. 1983), it nonetheless serves as an evidentiary admission, *see Higgins v. Mississippi*, 217 F.3d 951, 954–5 (7th Cir. 2000), and Cook has not attempted to explain it away.  Were the court to reach the merits of Plaintiffs' request for a preliminary injunction, Cook's statement would count against her in the weighing of the equities.

Motley's failure to appear in the 2005 Montgomery Municipal Court cases appears to have resulted in a suspension of her driver's license. Although no direct documentation of the 2005 suspension appears in the record, Motley received a ticket in 2013 for driving with a suspended license. (Doc. # 20-3.) That ticket could not have been validly issued, of course, unless Motley's license had already been suspended. The State contends, and Motley does not dispute, that the 2005 failure to appear resulted in a suspension, and that Motley's license "has been suspended continuously since 2005 as a result of her failure to appear in connection with her Montgomery Municipal Court cases." (Doc. # 21, at 10; *see* Doc. # 22, at 4.)

The 2013 ticket for driving with a suspended license is the second reason Motley's license is suspended. On September 24, 2013, Motley pleaded guilty in Montgomery *District* Court to the ticket for driving with a suspended license. The court imposed a fine and court costs totaling $310, and gave Motley a little less than a month to pay it in full. (Doc. # 20-3, at 4.) On December 20, 2013, the court issued a failure to pay warrant, and the case action summary shows that a suspension notice was also issued that same day. (Doc. # 20-3, at 7.)

On November 21, 2018, just two days after Plaintiffs' complaint was filed, Motley appeared in Montgomery *Municipal* Court to address her 2005 tickets. (Doc. # 20-3, at 18, 19.) She obtained a payment plan for those tickets, and the case was set for a hearing on January 14, 2019, to determine whether Motley had complied

with the plan.  (Doc. # 20-3, at 18, 19.)  That hearing apparently never occurred because, on December 7, 2018, Motley received notices from the Montgomery Municipal Court that her 2005 tickets had been cleared.  (Doc. # 22-3, at 2, 3.)

Thus, when the complaint was filed, Motley's license was suspended as the result of:  (1) a 2005 failure to appear in Montgomery Municipal Court; and (2) a 2013 failure to pay in Montgomery District Court.  Motley cannot afford to pay for her outstanding traffic tickets.  (Doc. # 1-3, at 1.)

## C.   The Claim

On November 19, 2018, Plaintiffs filed this lawsuit, alleging that the State's suspension of their licenses violates the Fourteenth Amendment's guarantees of due process and equal protection as explained by *Bearden v. Georgia*, 461 U.S. 660 (1983).  *Bearden* held that, before ordering imprisonment for failure to pay a fine, a sentencing court must determine whether an indigent probationer willfully refused to pay and, if his inability to pay was through no fault of his own, must consider alternative measures of punishment.  *Id.* at 672.

"Due process and equal protection principles converge" to protect indigent defendants from imprisonment solely because of their inability to pay fines.  *Id.* at 665.  The principle that the states must provide "equal justice for poor and rich, weak and powerful alike," *Griffin v. Illinois*, 351 U.S. 12, 16 (1956), "has not been confined to cases in which imprisonment is at stake," *M.L.B. v. S.L.J.*, 519 U.S. 102,

111 (1996).  Plaintiffs seek to extend *Bearden* to protect indigent persons from having their driver's licenses suspended without a finding of fault.

Plaintiffs' claim, brought on behalf of all similarly situated persons, is based on the State's suspension of their driver's licenses under Rule 26.11(i)(3) "without prior notice, the opportunity to be heard, and an express finding that the individual is able to pay and willfully failed to do so." (Doc. # 1, at 16.)  Plaintiffs seek to:  (1) enjoin ALEA from suspending licenses under Rule 26.11(i)(3) for nonpayment; (2) require ALEA to reinstate licenses that were suspended for nonpayment (assuming there is no other reason for suspension); and (3) require ALEA to provide notice to the drivers who are eligible to have their licenses reinstated.  (Doc. # 1, at 17–18.)

## IV.  DISCUSSION

Article III limits federal courts' jurisdiction to "cases" and "controversies."  U.S. Const. art. III, § 2.  "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Standing is assessed at the time the complaint is filed, *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 830 (1989), and a plaintiff must maintain standing throughout her entire case, *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997).  A plaintiff must also demonstrate standing for each of her claims and for each form of relief she seeks.  *Davis v. FEC*, 554 U.S. 724, 734 (2008).

To have standing, a plaintiff must establish: (1) an injury in fact which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) that her injury is likely to be redressed by a favorable decision. *Lujan*, 504 U.S. at 560–61. Plaintiffs' standing goes awry on causation and redressability.

## A. Because Plaintiffs' licenses were also suspended for failing to appear in court, they lack standing to challenge the suspensions for nonpayment.

As this court recently explained,

> When two laws independently prohibit the same thing but a plaintiff challenges only one law, the plaintiff lacks standing. That is because the challenged law does not cause the plaintiff's injury (the unchallenged law does), and striking down the challenged law would not remedy the injury (because the unchallenged law would still apply).

*Doe 1 v. Marshall*, --- F. Supp. 3d ---, No. 2:15-CV-606-WKW, 2019 WL 539055, at *12 (M.D. Ala. Feb. 11, 2019) (footnote omitted); *see also* 13A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3531.5 (3d ed. 2008 & Supp. 2018) ("Independent causation may be found when a plaintiff's activity is independently proscribed by two different laws. One law alone does not cause the injury if the other law validly outlaws all the same activity.").

The independent-cause principle implicates redressability as well. *See Doe 1*, 2019 WL 539055, at *12; *see also Massachusetts v. EPA*, 549 U.S. 497, 543 (2007) ("As is often the case, the questions of causation and redressability overlap."). That

is because a plaintiff whose conduct is proscribed by another, unchallenged law cannot get what she wants because the other law still stands in the way.[6]

The Eleventh Circuit applied the independent-cause principle in two cases to bar advertising companies from bringing First Amendment challenges to billboard bans. In *KH Outdoor, LLC v. Clay County*, a county denied a permit to a billboard company seeking to build several large signs because the signs did not comply with a city ordinance. 482 F.3d 1299, 1301 (11th Cir. 2007). The company's "injury" was that it could not erect the signs. *Id.* But the company did not have standing because the state's building code also prevented it from building the signs. *Id.* at 1303. Likewise, in *Maverick Media Group, Inc. v. Hillsborough County*, the court held that an advertising company lacked standing to challenge the county's denial of its permit application because the proposed sign was also prohibited by unchallenged height and size restrictions. 528 F.3d 817, 821 (11th Cir. 2008).

Courts have applied the independent-cause principle to other contexts. For example, in *Howard v. New Jersey Department of Civil Service*, the Third Circuit considered a challenge to a physical agility test that was required for public employment. 667 F.2d 1099, 1101 (3d Cir. 1981). The court held that the plaintiffs lacked standing because they failed the written test, which was also required for

---

[6] *See generally* The Rolling Stones, *You Can't Always Get What You Want*, *on* Let It Bleed (Decca Records 1969).

employment (and which they did not challenge).  *Id.* at 1102.  And in *Delta Construction Co. v. EPA*, the D.C. Circuit held that plaintiffs who challenged an EPA rule lacked standing because their injury was independently caused by an identical, unchallenged NHTSA rule.  783 F.3d 1291, 1296 (D.C. Cir. 2015); *see also White v. United States*, 601 F.3d 545, 552–53 (6th Cir. 2010) (federal cockfighting ban was not cause of plaintiffs' injuries because cockfighting is independently proscribed by the laws of all fifty states).

The independent-cause principle prevents Plaintiffs from maintaining their claim.  Plaintiffs' injuries are their license suspension, and their reason for suing is to have them reinstated.  At the time they filed their complaint, Plaintiffs' licenses were suspended for two different reasons, one of which they do not challenge.

First, both Cook and Motley had their licenses suspended for failing to pay fines that were imposed without a finding of fault.  Plaintiffs challenge that suspension, which occurred under Rule 26.11(i)(3), as unconstitutional.

Second, at the time they filed their complaint, both Cook and Motley had separate license suspensions based on their failures to appear on their designated court dates.  Cook's failure-to-appear suspension was based on her Hale County case, and Motley's was based on her Montgomery Municipal Court cases.

License suspensions for failure to appear in court are governed by another law.  Though the parties do not cite a rule under which a court or ALEA may suspend

a license for failure to appear, such authority appears to be given in Alabama Administrative Code r. 760-X-1-.12, which states that ALEA "*shall* suspend the driver license . . . of the defaulting driver" upon "written notice from the court." Plaintiffs do not challenge this rule, nor do they "dispute that courts have various tools at their disposal when an individual fails to appear at a properly noticed hearing — including suspending an individual's license or issuing a warrant." (Doc. # 22, at 9 n.4.) When the complaint was filed, Plaintiffs' licenses were suspended for failures to appear in separate cases — suspensions that were mandated by a rule they do not challenge. Thus, under the independent-cause principle, Plaintiffs lack standing to bring their claim.

That Motley remedied her Montgomery Municipal Court failure-to-appear suspension a mere two days after filing suit does not change the analysis. "The existence of federal jurisdiction ordinarily depends on the facts *as they exist when the complaint is filed*." *Newman-Green*, 490 U.S. at 830 (emphasis added). Actions taken after the complaint's filing cannot "retroactively create[]" jurisdiction "that did not exist at the outset." *Lujan*, 504 U.S. at 598 n.4. Plaintiffs have identified no exception to this rule, and the court may not create one, especially in view of an apparent attempt to manipulate jurisdiction.

One district court considering a *Bearden* challenge to a license-suspension statute held that the plaintiffs had standing despite their other, unchallenged

suspensions. *See Robinson v. Purkey*, 326 F.R.D. 105, 129 (M.D. Tenn. 2018), *appeal docketed*, No. 18-6121 (6th Cir. Oct. 24, 2018). In so holding, *Robinson* characterized the multiple suspensions as a "cumulative barrier" to license reinstatement and said that "[a] plaintiff who seeks removal of a barrier to obtaining a particular outcome 'need not allege that he would have obtained the benefit but for the barrier in order to establish standing.'" *Id.* (quoting *Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Mich. Gaming Control Bd.*, 172 F.3d 397, 404 (6th Cir. 1999)). Thus, the court said, a plaintiff need not remedy her other suspensions before suing as long as she challenges one of them as unlawful.

*Robinson*'s standing analysis is not sound because of two reasons.[7] First, *Robinson* analyzed injury-in-fact too narrowly and, in doing so, lost sight of causation and redressability. The court held that the plaintiffs' injuries-in-fact "include not only the simple fact of not having a driver's license, but also the *particular barriers* placed between the plaintiffs and reinstatement." *Id.* at 130 (emphasis added). In other words, that there were reasons for suspension other than the challenged law did not matter because the challenged law created its own, separate injury. The court then addressed whether *that* injury — the suspension

---

[7] Although it does not explicitly disagree with *Robinson*, another district court considering a *Bearden* challenge to a license-suspension statute noted in dicta that a plaintiff whose license was suspended under a different, unchallenged law "most likely lacks standing to pursue" such a challenge. *Fowler v. Johnson*, Civ. Case No. 17-11441, 2017 WL 6379676, at *2 n.3 (E.D. Mich. Dec. 14, 2017).

based on the challenged law — was fairly traceable to and redressable by each public official or public entity defendant. *See id.* at 130–132.

This analysis misses the forest for the trees. *Robinson* would hold that a Rule 26.11(i)(3) license suspension is its own injury, and a failure-to-appear suspension merely creates a "cumulative suspension" that Plaintiffs need not remove to establish standing. But if *Robinson* is right, *KH Outdoor* and *Maverick* would have come out differently. The advertising companies would have had standing because the billboard bans caused their own injuries. That the proposed signs also violated height and size and building code barriers would not matter because a plaintiff "need not allege that he would have obtained the benefit but for th[ose] barrier[s] in order to establish standing." *Robinson*, 326 F.R.D. at 129 (quoting *Lac Vieux*, 172 F.3d at 404). But the Eleventh Circuit held just the opposite — height and size and building code restrictions *did* prevent the companies from having standing. And the court is bound to apply that reasoning.

As made clear in their complaint and affidavits, Plaintiffs' injury is their license suspensions, and their requested relief is getting their licenses back. (Doc. # 1, 17–18; Doc. # 1-1, at 3; Doc. # 1-3, at 3.) But Rule 26.11(i)(3) did not cause their suspensions (their failures to appear did) and, taking the facts as they existed when the complaint was filed, declaring that rule unconstitutional would not remedy

their suspensions (because their licenses would still be suspended for failing to appear in separate cases).

Second, *Robinson* failed to address the authorities applying the independent-cause principle. The cases it did cite are inapposite. *Robinson* cited several cases in which courts held that *factual improbability* that a plaintiff achieve his desired outcome does not defeat standing. *See Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993) (contractors challenging racial set-aside need not prove actual loss of a contract, only denial of an opportunity to compete on equal footing); *Regents of Univ. of Calif. v. Bakke*, 438 U.S. 265, 280 n.14 (1978) (student challenging racial preference in college admissions need not prove that he would have been admitted in the absence of the preference); *Lac Vieux*, 172 F.3d at 405 (Indian tribe challenging preference in competitive-bidding process to build a casino need not prove that it would have ultimately submitted a successful bid). These cases do not address the situation when there is an independent *legal* barrier to a plaintiff's obtaining her desired result. As explained in *KH Outdoor*, *Maverick*, *Howard*, *Delta Construction*, and *White*, unchallenged laws that keep a plaintiff from getting what she wants vitiate standing.

The court respectfully disagrees with *Robinson*. Independent, unchallenged legal barriers — Plaintiffs' failure-to-appear suspensions under a different law —

keep Plaintiffs from having standing to bring this suit.[8]  Because Plaintiffs lack

standing, the court must dismiss this action for lack of jurisdiction.[9]

A dismissal for lack of standing "is necessarily without prejudice." *DiMaio*

*v. Democratic Nat'l Comm.*, 520 F.3d 1299, 1303 (11th Cir. 2008) (citing *Boda v.*

*United States*, 698 F.2d 1174, 1177 n.4 (11th Cir. 1983)).  The court will therefore

dismiss this action without prejudice.

---

[8] As a practical matter, it is worth noting the difficulty of explaining to the sentencing court that, because of indigency, a fine should be suspended or reduced, when the defendant does not attend the hearing.  *See Garcia v. City of Abilene*, 890 F.2d 773, 776 (5th Cir. 1989) ("Even assuming an individual who is fined is too poor to pay, if he does not appear and assert his indigency, the court cannot inquire into his reasons for not paying and offer alternatives.").

[9] The State also argues that Plaintiffs' injury is neither traceable to or redressable by Defendant Taylor because courts are ultimately responsible for suspending a license and Taylor merely follows courts' directives.  Not so.  "[T]he inquiry is not into the nature of an official's duties but into the effect of the official's performance of his duties on the plaintiff's rights." *Strickland v. Alexander*, 772 F.3d 876, 886 (11th Cir. 2014) (quoting *Finberg v. Sullivan*, 634 F.2d 50, 54 (3d Cir. 1980)).  In *Strickland*, the plaintiff challenged Georgia's post-judgment garnishment statute as unconstitutional.  *Id.* at 878–79.  The court asked whether the plaintiff's injury — his subjection to unlawful garnishment proceedings — was fairly traceable to the conduct of a court clerk responsible for implementing the garnishment statute.  *Id.* at 886.  The court concluded that it was, and that an injunction against the statute's implementation would also redress the plaintiff's injury.  *Id. Strickland* compels the same conclusion here.  Defendant Taylor is responsible for suspending licenses in Alabama.  That he lacks discretion when implementing court-ordered license suspensions does not change the analysis.  Without Taylor's actions. "it would be impossible to effectuate a license suspension." *Stinne v. Holcomb*, 355 F. Supp. 3d 514, 526 (W.D. Va. 2018) (holding that plaintiffs with suspended licenses had standing to sue state official responsible for enforcing state license-suspension law, even though suspension was automatic under the statute).  Plaintiffs' license suspensions are therefore fairly traceable to and redressable by Defendant Taylor.

## B. __Absent a named plaintiff with standing, class certification is inappropriate.__

To maintain a class action, the named plaintiffs must have standing. *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)). Because no named plaintiff has standing, the court may not certify a class.

## C. __Because Plaintiffs lack standing, the court will not consider the State's alternative grounds for dismissal.__

Since Plaintiffs do not have standing, the court lacks jurisdiction and may not reach the merits of their claim. *See Az. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 129 (2011) ("To obtain a determination on the merits in federal court, parties seeking relief must show that they have standing under Article III of the Constitution."). That means the court may not decide the State's Rule 12(b)(6) motion to dismiss for failure to state a claim.

The court will also not consider the State's other nonmerits challenges to Plaintiff's complaint, including its arguments that: (1) Plaintiffs' claim is moot in view of the State's changes to Form UTTC-1; and (2) sovereign immunity bars Plaintiffs' claim. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (recognizing that "a federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits'") (quoting *Ruhrgas*

*AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)); *Ruhrgas*, 526 U.S. at 584 (stating that there is no "sequencing of jurisdictional issues").

## V.  CONCLUSION

At bottom, Plaintiffs cannot get what they want (the reinstatement of their driver's licenses) because there are independent, unchallenged legal reasons why those licenses were suspended (their failures to appear in court in separate cases). That means Plaintiffs lack standing, and the court must dismiss the case without reaching the merits of their *Bearden* claim.

It is ORDERED:

(1)     Plaintiffs' motion for a preliminary injunction (Doc. # 2) is DENIED.

(2)     Plaintiffs' motion for class certification (Doc. # 4) is DENIED.

(3)     The State's motion to dismiss (Doc. # 20) is GRANTED.

(4)     This case is DISMISSED without prejudice.

A separate final judgment will be entered.

DONE this 1st day of May, 2019.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE